UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN ARTHUR DAWSON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No. 2:16-cv-01738-RDP |
| | } | |
| BYRON JACKSON, et al. | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OF DECISION

This case is before the court on Defendants' Motion for Final Summary Judgment. (Doc. #18). The parties have fully briefed the motion (Docs. # 18-1, 21-22), and it is under submission.

Plaintiff John Arthur Dawson ("Plaintiff") alleges that the City of Leeds ("Leeds"), Chief of Police Byron Jackson ("Jackson"), and Inspection Superintendent Brad Watson ("Watson") falsely arrested him, in violation of 42 U.S.C. § 1983 and the Fourth Amendment, and unlawfully converted his property under Alabama state law. In moving for summary judgment, Defendants justify their actions toward Plaintiff on September 22, 2014 on his stubbornness. (Doc. 18 at 1-2). They contend that Plaintiff's argumentativeness and his refusal to move his car rose to the level of "obstructing governmental operations," which justified his arrest. (*Id*. at 1-2). And, Defendants deny converting Plaintiff's property because there was no unlawful removal of property. (*Id*. at 5). Moreover, even if a viable tort claim could be asserted by Plaintiff, Defendants argue that Jackson and Watson are protected by quasi-judicial immunity, qualified immunity, and state agent immunity. Likewise, according to Defendants, the City of Leeds is not liable for the false arrest due to a lack of vicarious liability. (*Id.* at 3). And, in any event,

Defendants claim that Leeds is entitled to municipal immunity from the state-law intentional tort of conversion. (*Id*. at 5).

After careful review, the court concludes that Defendants are entitled to summary judgment on the false arrest claim because no genuine dispute of material fact exists for that claim. Defendant Jackson is entitled to quasi-judicial immunity and qualified immunity for the false arrest claim. Defendant Watson is not liable for any constitutional violation that occurred during the arrest because he did not personally participate in the arrest, nor did he have any authority to order that the arrest take place. Moreover, the court finds no basis for vicarious liability against Defendant Leeds and further finds there is no substantial evidence that an unlawful custom or policy instituted by Leeds was the moving force behind the arrest. As such, all Defendants are entitled to summary judgment for the false arrest claim. Moreover, because all federal law claims in this action have been resolved, this court declines to exercise jurisdiction to proceed further on the conversion claim.

## I. Background

### A. Factual Background

Plaintiff received a Notice of Public Nuisance from Defendant Leeds on September 19, 2013, stating that a public nuisance existed on his property at 1305 Vivian Street. (Doc. 18-2 at 6). The alleged nuisance included "overgrown grass and weeds, in violation of Section 11-13 of the Leeds Code of Ordinances." (*Id*.). The notice directed Plaintiff to abate the nuisance within fifteen days. (*Id.*).

On October 7, 2013, a Uniform Non-Traffic Citation and Complaint was issued to Plaintiff. (*Id.* at 2). The citation stated that Plaintiff had "allowed an accumulation of weeds, junk, inoperable motor vehicles, junk, debris [and] litter" to accumulate on his property, in

violation of City of Leeds Ordinance Number 606. (*Id.*). Under Section 1 of this ordinance, it is unlawful for a lot to have "injurious, noxious, or unsightly weeds," inoperable motor vehicles, or various forms of litter on any lot or premises. (Doc. 18-5 at 3). Section 4 of this ordinance allows for a municipal judge to order abatement and removal of the violation. (*Id*. at 5).

On January 17, 2014, Plaintiff was found guilty in the Leeds Municipal Court. (*Id.* at 9). The municipal court ordered Plaintiff to "abate [the] property to meet code requirements" and pay a $500 fine. (*Id*.). Plaintiff immediately gave notice of an appeal. (*Id*. at 9, 11-12). On March 18, 2014, a trial was set in the Circuit Court of Jefferson County for August 11, 2014. (Doc. 18-6 at 1). Proceeding *pro se*, Plaintiff mistakenly thought that the trial was set for August 18, 2014. (*Id*. at 14). When he failed to appear on August 11, a circuit judge dismissed Plaintiff's appeal and a writ of procedendo was ordered. (*Id*. at 3). On September 2, 2014, Plaintiff's first motion to reinstate his appeal was denied by the circuit court. (*Id*. at 5). Three days later, on September 5, 2014, Plaintiff's second motion to reinstate appeal was denied due to mootness. (*Id*. at 7).

On Monday, September 22, 2014, Defendant Watson arrived at Plaintiff's property. (Doc. 18-6 at 14). The subsequent events at Plaintiff's property were captured on video. (Doc. 18-6 at 8, Ex. 9 at 00:01-59:18). Upon entering the property, Watson and Plaintiff began to speak with each other, and Watson appeared to explain that an abatement was taking place and that Plaintiff's second motion to reinstate appeal had been denied. (*Id*. at 00:01-01:04). Plaintiff disputed this, saying that he still had an appeal pending. (*Id*. at 01:04-01:37). Defendant Watson informed Plaintiff that he was "obstructing a lawful operation" and asked someone off-camera to contact a police officer. (*Id*. at 01:38-01:48). The men continued to compare paperwork and argue about whether there had been a denial; during this conversation, Plaintiff insisted that he had filed a third motion to reinstate appeal that had not been denied. *(Id*. at 02:05-03:57).

3

Defendant Watson reiterated that Plaintiff was "interfering with a governmental operation," which Plaintiff denied. (*Id*. at 03:58-04:24). In turn, Plaintiff contended that the abatement order was not lawful (*i.e.*, "not good"). (*Id*.). Plaintiff also retorted that Defendant Watson was trespassing on his property. (*Id*. at 04:24-04:50).

Plaintiff and Defendant Watson then briefly walked away from each other, as Plaintiff continued to look through his paperwork. (*Id*. at 05:55-07:20). Plaintiff then claimed that the judge had granted his "motion to rescind" on the prior Friday, and that Defendant Watson simply needed to check to see if he had received it. (*Id*. at 07:20-08:40). Plaintiff stated that he was in "full compliance according to the pictures" with the municipal regulations and asked what else needed to be done; Defendant Watson responded that he was not in compliance. (*Id*. at 08:50-09:50). Plaintiff then proceeded to walk away, moving several things in his yard while the video panned around the property. (*Id*. at 9:50-17:30). Defendant Watson spoke via telephone to an unknown person, "Laura," who seemingly confirmed that there was nothing (such as a pending motion) that would prevent Watson from executing the order. (*Id*. at 17:30-18:40). At this point, uniformed police officers, including Defendant Jackson, arrived. (*Id*. at 18:40-18:45). Meanwhile, a voice on Plaintiff's telephone, which he was holding, appears to state that the motion that had been filed and granted was one to "retax," not one to "reinstate." (*Id*. at 18:45-19:49). Defendant Watson, who could also hear the voice, agreed with this statement.[1] (*Id*.). Watson again explained to Plaintiff that he was interfering with governmental operations, while Plaintiff again responded that he was in full compliance and told Watson and his personnel to get off his property "right now." (*Id*. at 19:50-20:38).

---

[1] Plaintiff and the unidentified caller appear to be discussing the retaxing of costs by the circuit court on September 19, 2014. (Doc. 18-6 at 10).

Throughout the video, a station wagon with a "No Trespassing" sign in the back window was parked on Plaintiff's property several feet in front of a wooden fence leading to his backyard. (*Id*. at 00:01-39:20). Plaintiff explained that he had moved the station wagon to the front of his gate "for the police" on Thursday, that he did not need to move it, and that the municipal court's order did not mandate him to move it off of his property and into the road. (*Id*. at 20:45-21:17). At this point, Defendant Watson requested that one of the police officers walk over, explained to the officer that he had a municipal court order that needed to be executed, and stated that Plaintiff was interfering with a government operation, all of which Plaintiff disputed. (*Id*. at 21:17-21:55). Plaintiff stated to the officer that he was not required to move his car, which he claimed that he had parked in that spot on Thursday, because "this is America." (*Id*. at 21:55-22:23). Defendant Watson then claimed that the station wagon had an expired tag and was immobile. (*Id*. at 22:23-23:00). In response, Plaintiff produced what appeared to be registration documentation and claimed that the police officer present had seen him move the vehicle previously. (*Id*.). Defendant Watson stated that he had to witness the vehicle moving himself and that Plaintiff was interfering with a governmental operation. (*Id*. at 23:00-23:30). Plaintiff proceeded to open the hood of his car and perform some work on it, failing to start it several times. (*Id*. at 23:30-39:20). Eventually, Plaintiff managed to start the car, back it up a short distance, pull forward a short distance, and turn the engine off. (*Id.* at 39:20-39:40).

Defendant Watson walked towards Plaintiff, but Plaintiff made a shooing hand motion and continued to argue that he was in full compliance with the city ordinance. (*Id*. at 41:15-44:40). Plaintiff also claimed that he had not exhausted his appeal rights because he had a new appeal filed and pending within the time limit. (*Id*.). At this point, Defendant Watson called over Defendant Jackson and informed him that Plaintiff was refusing to allow the city to enter his

5

property. Plaintiff argued that he simply had asked questions and had not refused anything. (*Id*. at 44:40-45:30). However, Plaintiff stated that he would not move his car off the property, he was not required to do so, and the officers could not enter his backyard through his house without a warrant. (*Id*. at 45:30-45:45). Defendant Jackson then handcuffed Plaintiff and informed him that he was under arrest. Jackson explained that he was taking Plaintiff to jail for interfering with government operations. (*Id*. at 45:45-47:30). Plaintiff's son proceeded to move two cars, including the station wagon driven by Plaintiff, out of the way of the city workers. (*Id*. at 48:35-56:20). The son then spoke to Defendant Watson about some items on the property and helped to open the gate to allow entry into the backyard. (*Id*.).

The video shows two vehicles parked in the backyard, along with some overgrowth, but the recording ended before any removal of items began. (*Id*. at 56:20-59:18). The parties now dispute whether the vehicles in question were inoperable and therefore subject to removal under the ordinance, citation, or municipal court order. (*See* Docs. 18-1 at 9; 21 at 7). Charges against Dawson on obstruction of governmental operations were *nol prossed* by the City of Leeds on October 16, 2015.[2] (Doc. 21 at 7).

### B. Procedural Background

Dawson filed this suit in the Circuit Court of Jefferson County, Alabama against Watson, Jackson, and Leeds on September 21, 2016. (Doc. 1-1 at 2). The complaint asserted § 1983 false arrest claims and state law conversion claims. (*Id*. at 3). On October 25, 2016, Defendants removed the action to the Northern District of Alabama under 28 U.S.C. § 1441 because this court had federal question jurisdiction over the action. (Doc. 1 at 1-2). On November 7, 2016, the case was reassigned to the undersigned. (Doc. 7 at 1). An amended complaint was filed by

---

[2] Although Plaintiff has not filed the case action summary cited in support of this averment, the averment has not been disputed by Defendants. (*See* Doc. 22 at 3-4).

Dawson on February 14, 2017. (Doc. 14 at 1-9). On April 14, 2017, Defendants filed this motion for summary judgment. (Doc. 18 at 1-30).

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'" *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)). Additionally, "[t]he mere existence of some factual dispute will not defeat summary judgment … unless that factual dispute is material to an issue affecting the outcome of the case…" *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). This court must review all evidence and "make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*).

## III. Discussion

Defendants move for summary judgment on both the federal § 1983 claims and the state law conversion claims. As Plaintiff concedes in his opposition brief, Defendant Leeds is entitled to summary judgment on all claims. For the reasons stated below, the court further concludes Jackson is due to be granted summary judgment on the false arrest claim because of quasi-judicial and qualified immunity. Additionally, Watson is due to be granted summary judgment on the false arrest claim because he did not personally participate in Dawson's arrest. Finally, the

court will exercise its discretion to decline supplemental jurisdiction over the state-law conversion claims.

### A. Claims Against Leeds

As is immediately clear from the parties' briefs, the false arrest and conversion claims against Defendant Leeds are meritless. Defendants point out that (1) "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" and (2) Plaintiff has not identified an unconstitutional municipal policy or custom that led to his arrest. (Doc. 18-1 at 12) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). In his opposition brief, Dawson concedes that "he has not been able to discover sufficient evidence of an unlawful policy or custom to establish *Monell* liability on this claim." (Doc. 21 at 10 n. 34). Dawson also concedes his conversion claim against Leeds, acknowledging in his opposition brief that "regardless of the merits … he cannot hold the City liable because of the municipal non-claim statute, Ala. Code § 11-47-23." (Doc. 21 at 26 n. 102). Therefore, Defendant Leeds is entitled to summary judgment on all claims.

### B. False Arrest Claims

The court addresses Plaintiff's false arrest claims against Defendants Jackson and Watson separately and in turn.

#### 1. Jackson

It is undisputed that Defendant Jackson arrested Plaintiff. Thus, Plaintiff has met the personal participation requirement of *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). But, Plaintiff's § 1983 false arrest claim fails for other reasons. Jackson's arrest of Plaintiff was premised upon an alleged obstruction of governmental operations, in violation of Alabama Code § 13A-10-2(a). Both sides claim that the video evidence supports their interpretation of whether the arrest was

lawful under § 1983. Ultimately, though, the court determines that Defendant Jackson is due to be granted quasi-judicial immunity and qualified immunity for the arrest.

Quasi-judicial immunity enables "[n]onjudicial officials [to be] encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (internal quotation omitted). Thus, officials "acting in furtherance of their official duties and relying on a facially valid court order [] are entitled to absolute immunity from suit in a [§] 1983 action." *Id*. at 556. In most circumstances, though, "qualified immunity is presumed sufficient to protect law enforcement agents engaged in their official responsibilities." *Id*. at 555 n. 3.

Plaintiff contends that the court order itself did not include any explicit language that "privilege[d] Defendants to violate Plaintiff's constitutional rights by carrying out an arrest." (Doc. 21 at 19). However, this is misguided, as relying on a facially valid order in the execution of an action is not nearly so stringent as being bound to only taking actions within the four corners of the order. In *Roland*, a deputy sheriff was given a temporary restraining order that enjoined the plaintiff from terminating water service. 19 F.3d at 553-59. The order instructed the sheriff to locate individual plaintiffs and bring them to turn the water back on. *Id*. at 554. When ordered by the deputy to do so, a plaintiff stated that she "did not have the proper tools" and that "it would be too dark by the time that she returned." *Id*. When the deputy stated that her refusal to comply would constitute obstruction, the plaintiff stated that "she would spend Christmas in jail rather than reconnect the water service." *Id*. After entering the sheriff's department, the plaintiff was informed that "she was not free to go because of the pending charge." *Id*. Ultimately, the Eleventh Circuit held that the sheriff's arrest of the plaintiff was protected by

quasi-judicial immunity because the plaintiff had obstructed an officer from "executing his official duties as judicially ordered." *Id.* at 556.

As *Roland* shows, the mere fact that a judicial order does not explicitly authorize an arrest does not mean that the arrest itself extends beyond the scope of the order. Indeed, it is not surprising that most court orders do not contemplate obstruction with enforcement of the order and, thus, they do not contain a provision authorizing arrests for non-compliance. An arrest effected because an individual is obstructing an officer from effectuating a facially valid court order is precisely the type of situation that would permit the arresting officer to be protected by quasi-judicial immunity. Just as the plaintiff in *Roland* was detained for refusing to perform an action to assist the accomplishment of an order -- driving to a location and turning on the water -- in this case Dawson was detained because he refused to move a vehicle and allow officers to enter his property.[3] (Doc. 18-6 at 8, Ex. 9 at 20:45-23:30, 45:30-45:45). In both cases, the arrestee's affirmative refusal to allow governmental operations to proceed constituted an unreasonable obstruction of the execution of the court order, and, thus, warranted detention. Even in the light most favorable to Plaintiff, his actions in the face of a valid order are substantially similar to those that led to an officer receiving quasi-judicial immunity in *Roland*.

Alternatively, Jackson is also protected by qualified immunity. For summary judgment on the basis of qualified immunity to be proper, Jackson must first "show that he was acting within the scope of his discretionary authority at the time the alleged wrongful acts occurred." *McCall v. Crosthwait*, 336 F. App'x 871, 872 (11th Cir. 2009) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003)). Plaintiff admits that Defendant Jackson satisfies this prong of the test. (Doc. 21 at 20).

---

[3] At several points, Plaintiff told Watson that he was trespassing and that Watson needed to get off his property "right now." (Doc. 18-6 at 8, Ex. 9 at 4:24-4:50, 19:50-20:38).

As Jackson has satisfied the discretionary authority element, to overcome his qualified immunity defense, Plaintiff must also show that (1) a constitutional right has been violated, and (2) the "right was clearly established at the time, meaning that a reasonable person should have known that the conduct violated that right." *McCall*, 336 F. App'x at 872. Even if Jackson lacked actual probable cause for the arrest, qualified immunity applies so long as "arguable" probable cause would have existed to a reasonable officer. *Walker v. Briley*, 140 F. Supp. 2d 1249, 1258 (N.D. Ala. 2001) (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 & n. 3 (11th Cir. 1999)).

In order for an officer's conduct to violate clearly established law, case law must provide a "fair warning" to officers that their conduct would violate a constitutional right. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). "Fair warning" comes from the caselaw of the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court that "make[s] it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). This caselaw may be established through a materially similar incident in binding precedent or a showing of a "broader, clearly established principle" that "should control the novel facts [of the] situation." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204-05 (11th Cir. 2012). Alternatively, a right may be "clearly established" where the violation "lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* at 1205.

Here, Plaintiff cannot establish that Defendant Jackson had a "fair warning" that he lacked arguable probable cause to support the arrest. While Plaintiff points to *Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010), in support of his argument against qualified immunity, he is effectively asking this court to put a square peg into a round hole. In *Grider*, a police officer

11

was denied qualified immunity for performing an arrest for obstruction of a government function, but the Eleventh Circuit clearly stated that the grounds for their decision lay in the fact that "Alabama's obstruction offense does not apply to 'the obstruction, impairment or hindrance of making an arrest'" of another person. 618 F.3d at 1258 (quoting Ala. Code § 13A-10-2(b)). The circumstances of Plaintiff's arrest simply are not analogous to those at issue in *Grider* because this case concerns the execution of a judicial abatement order, not an arrest of another individual. Accordingly, this case is sufficiently distinguishable from *Grider* and that decision did not effectively put Defendant Jackson on notice that his actions were unlawful.

Plaintiff's reliance on district court authority is a non-starter. District court decisions are not binding precedent. As stated above, to establish clearly applicable law, an opinion must be issued by the "U.S. Supreme Court, Eleventh Circuit [ ], or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir. 1997) (emphasis added). Thus, district court caselaw is simply irrelevant to determining whether Defendant Jackson violated a clearly established right. Finally, the court is not persuaded by Plaintiff's conclusory argument that Defendant Jackson's conduct "lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent." (Doc. 21 at 23) (quoting *Loftus*, 690 F.3d at 1205). Even after viewing the facts in the light most favorable to Plaintiff, it is impossible to say that Defendant Jackson's conduct rises to such a severe level. For these reasons, Plaintiff has failed to overcome Defendant's qualified immunity defense.

### 2. Watson

As noted above, Plaintiff's false arrest claim fails because the arresting officer, Jackson, is entitled to both quasi-judicial immunity and qualified immunity. For these same reasons,

Watson would also be entitled to quasi-judicial and qualified immunity *if* he had been involved in Plaintiff's arrest. But, here, there is an additional basis for granting Watson's motion.

Plaintiff's claim of false arrest against Defendant Watson falters because Watson was not the person that performed the arrest. The video clearly shows that it was Defendant Jackson who arrested Plaintiff. (Doc. 18-6 at 8, Ex. 9 at 45:45-47:30). A government official is "only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. While Watson called Jackson over and informed him that Plaintiff was obstructing government operations, Watson himself did not perform the arrest or in any way command Jackson to arrest Plaintiff. Plaintiff argues that Defendant Watson's § 1983 liability arises from "proof of an affirmative causal connection" between his acts and the acts of Jackson. (Doc. 21 at 10 n. 34) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010)). However, Plaintiff also acknowledges in that same footnote that *Brown* "stands for the proposition that 'being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action.'" (Doc. 21 at 10 n. 34) (quoting *Brown*, 608 F.3d at 737). Here, Plaintiff has not shown that Defendant Watson was part of the authorizing chain of command.

The facts of this case actually fall well short of those presented in *Brown*, a case in which the court found there was no § 1983 liability. There, an officer arresting one plaintiff told another officer, who was not his subordinate or within his chain of command, to arrest the second plaintiff. *Brown*, 608 F.3d at 737. The court held that while the instructing officer "arguably *wanted*" the second plaintiff arrested, there was no personal participation by the instructing officer in the arrest of the second plaintiff that could establish the causal connection required for § 1983 liability. *Id*. (emphasis in original). Likewise, at the time of Plaintiff's arrest, Watson was

13

the Inspector Superintendent for Leeds, while Jackson was the Chief of Police. No Rule 56 evidence suggests that any chain of command existed between these two men. Furthermore, no evidence is presented that Watson had any authority whatsoever to instruct, authorize, order, or control Jackson's power to arrest an individual. Even if Watson *wanted* Jackson to arrest Plaintiff and provided Jackson with information to justify the arrest, under *Brown* there is no viable § 1983 claim against Watson without a showing that he had control over Jackson's actions or participated in the arrest.

Plaintiff claims that Defendants "cannot demonstrate that there are no genuine issues of material fact" because the videotape of Plaintiff's arrest "does not 'blatantly contradict' or 'utterly discredit' Plaintiff's account of the facts." But that argument cuts no ice because Plaintiff does not dispute any material fact related to his arrest. (Doc. 21 at 8-9) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013)). Thus, while Plaintiff vigorously disputes that he "physically interfered" with the Defendants, he relies upon the video to support his claim. (Doc. 21 at 9). And, with respect to Plaintiff's arrest, both sides agree that the video recording speaks for itself. (Docs. 18-1 at 4; 21 at 5). The court notes that the undisputed video evidence shows only Defendant Jackson arresting Plaintiff. Therefore, even after viewing the video in the light most favorable to Plaintiff, the court concludes that Defendant Watson is entitled to summary judgment on Plaintiff's false arrest claim.

Because Defendant Watson did not participate in executing the arrest and as he was not within the same chain of command as the arresting officer, his actions, even viewed in the light most favorable to Plaintiff, do not support a false arrest claim.

### C. Jurisdiction Over Plaintiff's Conversion Claim

Under 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Because Defendants are entitled to summary judgment for the § 1983 claim, no federal-law claim remains in this action. Moreover, diversity jurisdiction is inapplicable because Defendants Watson and Jackson, both Alabama citizens, are non-diverse to Plaintiff, an Alabama citizen.

Under 28 U.S.C. § 1367(c)(3), this court has discretion to retain jurisdiction over or dismiss state-law claims once all federal claims are decided. However, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1088-89 (11th Cir. 2004). This court finds no reason to retain jurisdiction over the conversion claim, and, thus, dismisses it without prejudice.

### IV. Conclusion

Based on the foregoing, this court concludes that Defendants' motion for summary judgment (Doc. 18) is due to be granted. It is due to be granted with prejudice as to all claims, both state and federal, asserted against Defendant Leeds. It is due to be granted with prejudice as to the § 1983 false arrest claim asserted against Defendants Jackson and Watson. Finally, Plaintiff's conversion claim against Defendants Jackson and Watson are due to be dismissed without prejudice. An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this August 23, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE